IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL W. JOHNSON,

    Plaintiff

v.      CIVIL NO. JKB-19-1916

UNITED PARCEL SERVICE, INC.,

    Defendant

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Pro se Plaintiff Michael Johnson filed suit against Defendant United Parcel Service, Inc. ("UPS") alleging retaliation and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq*. UPS filed a motion to dismiss, and the matter is fully briefed. No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, UPS's motion to dismiss will be granted.

*I.  Background*[1]

Johnson has been employed by UPS since 1989 and has worked as a driver since 2000. (Compl., Ex. 3, ECF No. 1-3.) Johnson and his wife, who formerly worked at UPS, are Seventh Day Adventists who observe the Sabbath beginning at sundown on Friday. (Opp'n Mot. Dismiss at 1–2, ECF No. 28.) On May 1, 2013, Johnson and his wife requested a religious accommodation so that they would not have to work on Friday after sundown in order to respect their Sabbath.

---

[1] At the motion to dismiss stage, the Court views the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). The Court construes pro se complaints "liberally." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). UPS argues Johnson should not receive the benefit of this liberal construction due to the fact that Johnson admitted he received some legal guidance. However, Johnson remains unrepresented—a fact reflected by his filings—and the Court will accordingly grant Johnson the consideration afforded to a pro se plaintiff.

1

(*Id.*) As part of their religious accommodation, Johnson and his wife would not work on Fridays for half of the year and would pay for this out of their vacation days. (*Id.* at 2.)

On June 16, 2014, Johnson's wife, Khalilah Johnson ("Mrs. Johnson"), filed a case against UPS and two Union entities which was subsequently removed to this court.[2] *Johnson v. United Parcel Serv., Inc.*, Civ. No. RDB-14-4003, 2015 WL 4040419 (D. Md. June 30, 2015). In that case, Mrs. Johnson brought a variety of claims for breach of contract, retaliation, and discrimination based on race, gender, and religion. *Id.* The court ultimately granted summary judgment in favor of UPS and the United States Court of Appeals for the Fourth Circuit affirmed that ruling. *Johnson v. United Parcel Serv., Inc.*, 681 F. App'x 177, 178 (4th Cir. 2017) (unpublished). Mrs. Johnson filed another suit in this court on June 27, 2017 alleging retaliation and a hostile work environment, which remains pending. *Johnson v. United Parcel Serv., Inc.*, Civ. No. GLR-17-1771, 2018 WL 3956623, at *2 (D. Md. Aug. 16, 2018).

Johnson alleges that UPS harassed him and retaliated against him because of his participation in and support for his wife's lawsuit. (Compl. at 6, ECF No. 1.) Johnson also alleges that he was retaliated against because of his religious accommodation. (*Id.*) Specifically, Johnson states that he has a contractual right in his Collective Bargaining Agreement ("CBA") with UPS to work 9.5 hours a day, and that UPS has repeatedly violated this right by forcing him to work more than 9.5 hours a day when other drivers were able to leave earlier. (Opp'n Mot. Dismiss at 2.) Johnson also states that he has had to attend multiple disciplinary hearings, requiring him to miss work and pay, as a result of pretextual discipline. (*Id.* at 3.)

This is not the first case against UPS that Johnson has brought in this court. Johnson filed

---

[2] At the motion to dismiss stage, courts may "take judicial notice of matters of public record," such as prior opinions of this Court, without converting the motion into one for summary judgment. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

a separate complaint against UPS in 2017 alleging retaliation and discrimination. *Johnson v. United Parcel Serv., Inc.*, Civ. No. ELH-17-1546, 2018 WL 2237469, at *1 (D. Md. May 16, 2018). The court found that Johnson had failed to exhaust his administrative remedies with respect to his claims of discrimination based on religion, retaliation based on his request for religious accommodation, and retaliation for his participation in his wife's lawsuit because he had failed to include these facts in his EEOC charge ("2016 charge"), and the court therefore dismissed those claims. *Id.* at *12–13. The court found that Johnson's 2016 charge only alleged retaliation based on an EEOC inquiry that he filed in January 2016 and his request to work 9.5 hours. *Id.* Judge Hollander dismissed the claims stemming from the 2016 charge, finding that Johnson had failed to adequately plead these causes of action. *Id.* at *18. The court provided Johnson one month to amend his complaint, but he failed to do so and his case was closed. *Id.* at *19.

On March 29, 2019, Johnson filed another EEOC charge ("2019 charge") based on discrimination and retaliation.[3] (Compl., Ex. 1 at 3, ECF No. 1-1.) Johnson's 2019 charge includes several attachments providing additional details regarding his allegations. In Attachment A, Johnson states that "UPS started ignoring" his "contractual right" to work 9.5 hours and his religious accommodation to not work Friday evenings in retaliation for his support of his wife's lawsuits and his "religious identity." (*Id.*, Ex. 2, ECF No. 1–2.)[4] Johnson attaches an affidavit as Exhibit B, which contains complaints about being overworked in January and February 2017.

---

[3] At the motion to dismiss stage, courts may consider "documents attached to the complaint . . . so long as they are integral to the complaint and authentic." *Philips*, 572 F.3d at 180. Accordingly, the Court will consider the attachments to both Johnson's original complaint and amended complaint as he expressly incorporates these documents into his complaint. However, the Court notes that it "is not required to act as an advocate for a pro se litigant," *Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978), nor must it "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Therefore, while the Court will consider the facts alleged in Johnson's attachments, the Court will not create new arguments for Johnson that were not clearly presented to this Court.

[4] On his 2019 charge, Johnson states that the date the earliest discrimination took place was January to February 2017. (Compl., Ex. 1 at 3.) However, on Johnson's attached affidavit, he states that this has been "a continuing problem and dates back to 2015" (*id.*, Ex. 3), which matches the timeline provided on his "Continued Complaint" (*id.*, Ex. 5).

(Compl. Ex. 3, ECF No. 1-3.) Attachment C is Johnson's declaration from his wife's case, dated February 23, 2016. (*Id.*, Ex. 4, ECF No. 1-4.) In his declaration, Johnson states that he observed members of UPS management speak to him, but not his wife, after they made their request for religious accommodation in May 2013. (*Id.*, Ex. 4 at 2.) He also states that her truck was "overloaded with packages" following their request. (*Id.*) In addition, Johnson states his workload began to increase in January 2015, and that he asked to be placed on the list of employees working 9.5 hours, but his request had not been accepted. (*Id.*) Instead, he states his truck was overloaded "[i]n retaliation," though he does not specify what the retaliation was for. (*Id.*) He also states that another driver told him once "that they will not give [him] any help when [he] request[s] it, because [his] religious accommodation provides [him] with a day off on Friday[]." (*Id.*, Ex. 4 at 3.)

Exhibit D, titled "Continued Complaint," contains several pages worth of grievances from January 21, 2015 through February 15, 2017, and was also filed in Johnson's 2017 litigation. (*Id.*, Ex. 5, ECF No. 1-5.) The document includes a list of dates on which he: was required to work over 9.5 hours; experienced disputes over paid leave and time off (including an unexplained discharge); contested disciplinary action; experienced the rescheduling of a deposition; served suspensions without pay; and attended several hearings which appear to be related to alleged performance issues.[5] (*Id.*) Johnson also states that on Friday, April 15, 2016 he sent several messages to the "center" because he was given too much work and needed help to honor the Sabbath. (*Id.*, Ex. 5 at 4.) He said this was the second time his truck was overloaded on a Friday, though it is unclear whether he actually had to work after sundown on Friday. (*Id.*)

Johnson filed his Complaint on June 28, 2019. (Compl., ECF No. 1.) UPS filed a motion

---

[5] Though Johnson's list of grievances includes many complaints about working over 9.5 hours, it is unclear when he was placed on the 9.5 list in light of his statement in his declaration that his request to be placed on the 9.5 list had not been accepted as of February 2016.

4

to dismiss on August 12, 2019 (ECF No. 10), and filed a supplemental motion to dismiss on August 15, 2019 (ECF No. 14.) Johnson filed a motion for an extension of time to respond to UPS's motion to dismiss on August 29, 2019, in which he requested an additional two weeks to respond, which he said would be "honored on or before September 13, 2019" (ECF No. 19). This Court granted that request (ECF No. 20).

On September 16—three days after Johnson was required to respond to UPS's motion to dismiss—Johnson submitted an amended complaint and a further motion for an extension of time which would allow him to respond to UPS's motion to dismiss by November 13, 2019 (ECF No. 21). This Court granted that request (ECF No. 25). Johnson's Amended Complaint "changes," rather than replaces, his original complaint, and he states that he incorporates the allegations in the attachments into his complaint. (Am. Compl. at 1, ECF No. 21.) Johnson attaches his 2016 charge to his amended complaint, which details the alleged retaliation he faced for filing an EEOC inquiry and requesting to work 9.5 hours. (*Id.*, Ex. 2 at 4, ECF No. 21-2.) Johnson also attaches his EEOC "Intake Questionnaire," dated January 1, 2016, which makes a general complaint regarding religious discrimination. (*Id.*, Ex. 2 at 5–8.) Johnson also attaches a letter to a "Committee" dated September 4, 2015 in which he complains of overwork and disciplinary actions related to his request to be on the "9.5 list." (*Id.*, Ex. 1 at 2–3, ECF No. 21-1.) In this letter, Johnson alleges that he is being retaliated against by UPS because he has filed several grievances against UPS for making him work more than 9.5 hours. (*Id.*)

On September 26, UPS filed a motion to dismiss Johnson's amended complaint, which incorporated its prior supplemental motion to dismiss. (ECF No. 23.) On November 15—two days after the deadline provided in this Court's Order granting Johnson's request for an extension—

—Johnson filed his opposition to UPS's motion to dismiss (ECF No. 28).[6] This document contained a section entitled "Amended Pleadings," in which Johnson clarifies that he is making three claims: retaliation based on protected activity (Count I); retaliation for requesting and maintaining a religious accommodation (Count II); and hostile work environment on the basis of religion (Count III). (Opp'n Mot. Dismiss at 3.) In addition, Johnson attached several new exhibits to this document, including: a Record of Grievance made to his Union in 2016 for working more than 9.5 hours and not having his religious accommodation honored; correspondence between Johnson and the EEOC in 2017 regarding Johnson's complaints about advice he received; documentation related to his original request for religious accommodation in May 2013; documentation regarding suspensions; what appears to be a photograph of a full truck; electronic messages Johnson sent to "Center and Dispatch Site" regarding being overworked and needing help to finish before the Sabbath; and excerpts from what appears to be his CBA. (Opp'n Mot. Dismiss, Exs. 1–3.) UPS filed its reply on November 29, 2019 (ECF No. 29).

## *II. Legal Standard*

UPS filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Mot. Dismiss at 1.) A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of the mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. Courts must "accept the well-pled allegations of the complaint as true, . . . constru[ing]

---

[6] Despite the lateness of this filing, the Court considered its contents and finds them unpersuasive, as discussed below.

the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra*, 120 F.3d at 474. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (citation omitted) (quoting *Twombly*, 550 U.S. at 555, 557). Courts need not accept legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

Plaintiffs need not "plead facts that constitute a prima facie case in order to survive a motion to dismiss." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012). However, the plaintiff must present facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III. Analysis

### 1. Consideration of Facts in Johnson's Response to the Motion to Dismiss

As a preliminary matter, UPS argues that Johnson should not be allowed to amend his complaint through his response to UPS's motion to dismiss, in which Johnson provides additional details supporting his claims and includes a section titled "Amended Pleadings." (Reply at 3–4.) UPS argues that Johnson has already amended his complaint once as a matter of course under Federal Rule of Civil Procedure 15(a), and that any other amendments require leave of the court or permission of the opposing party. (*Id.* at 3.) Though courts should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15, courts need not allow a party to amend a pleading where such amendment would be futile, *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). An amendment is futile where the amended complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). As explained below, because Johnson's complaint, including the

7

additional supporting facts in his opposition brief, fails to state a claim to relief, it would be futile to permit Johnson to formally amend his complaint through the "Amended Pleading" section of his opposition brief. Accordingly, to the extent Johnson intends for his opposition to constitute a motion to amend his complaint, this Court will deny that request.

Though the Court will not allow Johnson to formally amend his complaint, the Court will consider the additional facts presented in his response. Though it is ordinarily true that a party cannot amend its pleading through briefing, as part of the "duty to construe pro se pleadings liberally," courts may consider allegations in a response to a motion to dismiss, even if they were not included in the original complaint. *Higgs v. Airframe Modification Prof'l Mechs., Inc.*, Civ. No. JKB-10-2379, 2011 WL 1637637, at *2 (D. Md. Apr. 29, 2011); *see e.g., Arije v. Pointcross Life Scis.*, Civ. No. JKB-18-3119, 2019 WL 652426, at *3 (D. Md. Feb. 15, 2019) (considering new facts alleged in pro se plaintiff's opposition brief where no new allegations were raised); *Rush v. Am. Home Mortg., Inc.*, Civ. No. WMN-07-0854, 2009 WL 4728971, at *3 (D. Md. Dec. 3, 2009) (considering new facts alleged in an opposition brief "to the extent that the additional facts support [a pro se plaintiff's] existing claims"). Here, Johnson does not seek to add new claims in his opposition brief, and instead provides additional details supporting and clarifying the claims he already alleged. The Court finds no reason not to consider this clarifying information in deciding whether Johnson has stated a plausible claim when defendants were on notice of the allegations and able to fully respond, as is the case here.[7] Therefore, the Court will consider the facts in Johnson's response brief in deciding whether Johnson stated a plausible claim.

---

[7] As explained above, Johnson also attaches a variety of documents to his opposition brief. These new attachments mainly provide supporting documentation for the facts Johnson had previously alleged in his "Continued Complaint." Cognizant of the need to interpret *pro se* plaintiffs' briefing liberally, and of the fact that UPS does not challenge these documents' authenticity, the Court will consider these documents to the extent they are "integral to and explicitly relied on in the complaint." *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). The Court notes that consideration of these documents does not alter the Court's analysis of Johnson's claims.

8

## 2. Title VII

Title VII protects employees against religious discrimination in the workplace, 42 U.S.C.A. § 2000e-2, and retaliation for challenging unlawful employment practices, 42 U.S.C.A. § 2000e-3. "Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). This "ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). Accordingly, only claims that are "reasonably related" to a party's charge "and can be expected to follow from a reasonable administrative investigation" may then be brought in a civil action. *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Johnson alleges in his 2019 charge and its attachments that he was retaliated against based on his religious accommodation and his participation in his wife's lawsuit, and he also alleges that he faced a hostile work environment on the basis of his religion. The Court will address the substance of Johnson's claims in turn.

### a. Res Judicata

As a preliminary matter, UPS's primary argument in favor of dismissing Johnson's claims is that they are barred by the principles of res judicata, which includes claim preclusion. *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002). Claim preclusion prevents a party from bringing litigation that "arises from the same cause of action" as an earlier case with a "valid and final judgment." *Id.* It also bars claims "that might have been presented" in the prior case. *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). Claim preclusion requires:

> 1) [T]he prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the

9

> requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

*Covert v. LVNV Funding, LLC*, 779 F.3d 242, 246 (4th Cir. 2015) (alteration in original) (quoting *Varat*, 81 F.3d at 1315). "'[C]laims are part of the same cause of action when they arise out of the same transaction or series of transactions, or the same core of operative facts.'" *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003) (quoting *Varat*, 81 F.3d at 1316).

The Court finds that the elements of res judicata are not met here. Though Johnson's 2017 Complaint was dismissed, the claims Johnson makes in this suit—retaliation based on his religious accommodation and participation in his wife's lawsuit—were dismissed for failure to exhaust administrative remedies. *Johnson v. United Parcel Serv., Inc.*, Civ. No. ELH-17-1546, 2018 WL 2237469, at *13 (D. Md. May 16, 2018). Dismissal for failure to exhaust administrative remedies does not bar plaintiffs from bringing a subsequent action after they have properly exhausted administrative remedies. *See e.g., Gaines v. Anderson*, Civ. No. RDB-17-2755, 2018 WL 1156768, at *7 (D. Md. Mar. 5, 2018) (res judicata did not bar plaintiff's claim where plaintiff had not exhausted her administrative remedies at the time of the first suit); *see also* Restatement (Second) of Judgments § 20 (1982) (A judgment for defendant "which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied . . . ."). Johnson had also not yet brought an EEOC charge alleging a hostile work environment at the time of his prior suit. Therefore, Johnson could not have brought these claims in his previous suit and they are not barred here by res judicata.[8]

---

[8] Of course, to the extent Johnson seeks to re-litigate his 2017 case by incorporating his 2016 charge into his amended complaint, such claims would clearly be barred by res judicata as they were previously adjudicated by this Court. *Supra* at 2–3. However, based on Johnson's response in opposition to UPS's motion to dismiss, he only brings three causes of action in this suit, and as discussed above, *supra* at 10, none are barred by res judicata.

#### *b. Retaliation*

A retaliation claim pursuant to Title VII requires a plaintiff demonstrate: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190. Adverse employment action in the retaliation context means action which "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). In other words, the adverse employment action complained of must rise above "petty slights, minor annoyances, and simple lack of good manners." *Id.*

Johnson presents two different theories of retaliation, which the Court will address in turn.

#### *1. Retaliation for Wife's Lawsuit*

First, Johnson argues that his protected activity was his participation in his wife's lawsuit which alleged unlawful employment practices at UPS. Title VII prohibits employers from discriminating against employees for "oppos[ing] any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3. Accordingly, Johnson's participation in and support for his wife's lawsuit—specifically his submission of a declaration—qualifies as a protected activity under Title VII.

Secord, Johnson alleges that in retaliation for his participation in his wife's lawsuit, UPS went out of its way to assign him additional work in violation of his CBA when it could have given that additional work to other employees who had not elected to work 9.5 hours. UPS argues that the assignment of additional work does not alone constitute materially adverse action. However, this Court has recognized that "[i]n certain circumstances, '[e]xtra work can be a material

difference in the terms and conditions of employment.'" *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 599 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012) (quoting *Minor v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006)). This Court finds that forcing an employee to work overtime multiple times a week could reasonably dissuade an employee from participating in protected activity. Accordingly, the Court finds that Johnson adequately pleads adverse action by alleging that he was forced to work overtime additional times a week for multiple years.

Johnson also alleges that he was subject to disciplinary actions which sometimes required him to go to hearings and miss work, which in turn meant that he did not receive pay for those days and was forced to spend money on travel. (Opp'n Mot. to Dismiss at 3–4.) Johnson's list of grievances also include mentions of a "warning letter," generic "discipline," and being falsely accused of not delivering two packages and reckless driving. (Compl., Ex. 5.) However, reprimands or poor performance reviews by themselves do not constitute materially adverse employment action in the retaliation context without additional associated harms. *See Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003). Johnson remains employed by UPS and has not explained how these reprimands or false accusations have led to any impact on the terms and conditions of his employment. Thus, while the Court will treat suspensions or required attendance at hearings—both of which he alleges involved the loss of pay—as adverse employment actions, the Court will not treat the other disciplinary actions Johnson complains of as adverse employment actions.

However, though Johnson has satisfied the first two requirements for a retaliation claim, he fails to adequately plead causation. Though Johnson has alleged participation in a protected activity through participation in his wife's lawsuit, he has not alleged that the individuals who forced him to work overtime or disciplined him for alleged errors while on the job knew about his

wife's lawsuit or his participation in it, much less that such knowledge was the impetus for Johnson's overtime assignments or discipline.

Nor has Johnson alleged that the alleged retaliation for his protected activity occurred in such close proximity to his participation in his wife's lawsuit such that it supports an inference of causation. Proximity in time between the employer's discovery of protected activity and adverse employment action can be sufficient to plead causation so long as the time between the two occurrences is "'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (quoting *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). The Fourth Circuit has found that even "three to four months" between protected activity and adverse employment action "is too long to establish a causal connection by temporal proximity alone." *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006). Here, Mrs. Johnson's lawsuit was filed on June 16, 2014, and Mr. Johnson drafted his declaration in support of that lawsuit on February 23, 2016. (Compl., Ex. 4 at 3.) Yet Johnson alleges that he began to be overworked and unfairly disciplined in January 2015. (*Id.*, Ex. 5 at 1.) Johnson offers no explanation for why the employment action he complains of began six months after the lawsuit was filed, nor does he allege his treatment changed in any way once he filed his declaration. Thus, temporal proximity alone cannot save Johnson's claim for retaliation.

Though Johnson need not plead all the elements of a prima facie case to survive the motion to dismiss stage, he must plead facts which make his claim of retaliation on account of his wife's lawsuit plausible. Because Johnson has failed to do so here by failing to provide any facts supporting his assertion that the adverse action he faced was the result of his protected activity, the Court will grant UPS's motion to dismiss Johnson's claim of retaliation on these grounds.

### 2. *Retaliation for Religious Accommodation*

13

Johnson also alleges that he was retaliated against for seeking a religious accommodation. (Compl. at 6.) As a preliminary matter, courts in this district—including the courts adjudicating the Johnson's cases—are split over whether requesting a religious accommodation is a protected activity. *Compare Johnson v. United Parcel Serv., Inc.*, Civ. No. GLR-17-1771, 2018 WL 3956623, at *8 (D. Md. Aug. 16, 2018) (requesting a religious accommodation is not a protected activity because an employee is not opposing any unlawful action of the employer), *with Johnson v. United Parcel Serv., Inc.*, Civ. No. RDB-14-4003, 2016 WL 4240072, at *5 (D. Md. Aug. 11, 2016), *aff'd*, 681 F. App'x 177 (4th Cir. 2017) ("The first element is not in dispute—Johnson engaged in protected activity by requesting an accommodation for her religious beliefs in May 2013."). However, the Court need not resolve this dispute because even if requesting a religious accommodation qualifies as protected activity under Title VII, Johnson fails to allege that he faced any adverse employment action because of his request for religious accommodation.

First, as with his claim of retaliation based on participation in his wife's lawsuit, the adverse action Johnson complains of, which began in January 2015 at the earliest, did not occur in such close temporal proximity to his May 2013 request for religious accommodation to support an inference of causation based on temporal proximity alone. *See Pascual*, 193 F. App'x at 233. Johnson argues in his response brief that the reason he waited several years after making his request for religious accommodation to file this complaint was because UPS did not start to harass him until his wife was no longer employed at UPS. (Opp'n Mot. Dismiss at 2.) Not only does Johnson not provide the date when his wife stopped working at UPS, but he also does not present any facts which support his belief that the adverse employment action he experienced was due to his request for a religious accommodation. The Court has identified only one instance in which Johnson provides factual support for his allegation that his treatment stemmed from his request for religious

accommodation. Johnson states in his declaration from his wife's lawsuit on February 23, 2016 that though he had been instructed by his supervisors to help others, another driver told him once "that they will not give [him] any help when [he] request[s] it, because [his] religious accommodation provides [him] with a day off on Friday[]." (Compl., Ex. 4 at 3.) However, the Supreme Court has made clear that the action complained of in a retaliation case must be materially adverse and represent "significant" as opposed to "trivial" harm. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998) (Title VII is not meant to create "a general civility code for the American workplace.") Accordingly, to be actionable, such harm must deter a reasonable person from reporting unlawful activity. *Burlington*, 548 U.S. at 68.

Not only would a reasonable employee not be dissuaded from participating in protected activity after one employee told him that some people would not help him with some aspect of his job (the details of which Johnson does not provide), but Johnson clearly was not dissuaded from challenging what he believed to be unlawful action at UPS. After this interaction, Johnson filed two separate lawsuits in federal court as well as apparently dozens of grievances against UPS, in addition to filing a declaration in support of his wife's lawsuit against UPS. Accordingly, the Court finds that this single instance does not rise to the level of adversity required to plead a claim of retaliation.

An employee also engages in protected activity when he or she opposes an activity that he or she reasonably believes to be unlawful under Title VII. 42 U.S.C.A. § 2000e-3. Johnson states in his list of grievances that on Friday, April 15, 2016 he sent several messages to the "center" because he was given too much work and needed help to honor the Sabbath. (Compl., Ex. 5 at 4.) Even if this action was interpreted as Johnson "opposing" a practice he believed to be unlawful—

15

namely, being forced to work on the Sabbath—Johnson provides no facts suggesting that he was overworked or disciplined based on this specific occurrence. In fact, his list of grievances regarding being overworked and disciplined begins in January 2015, over a year before this date.

In conclusion, Johnson has not pleaded any facts supporting a causal link between adverse employment action and his religious accommodation. Accordingly, his retaliation claim on the basis of his religious accommodation will be dismissed.[9]

### *3. Hostile Work Environment*

A Title VII claim of a hostile work environment based on religious discrimination requires a plaintiff show that "harassment was (1) unwelcome, (2) because of religion, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) imputable to the employer." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313 (4th Cir. 2008). Even one instance can create a hostile work environment if the incident is sufficiently egregious. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280–81 (4th Cir. 2015). A hostile work environment claim requires that the plaintiff subjectively perceive the environment to be hostile and that the environment is objectively hostile as judged by a "reasonable person." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In determining whether a workplace is a hostile environment, courts must look to "all the circumstances," which could include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

---

[9] Title VII also requires that plaintiffs file an administrative charge within 300 days of the alleged unlawful employment practice when such claims are initially instituted with certain state or local agencies, as they are in Maryland. 42 U.S.C.A. § 2000e-5(e)(1); *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008). Johnson filed his 2019 charge on March, 29, 2019. (Compl. Ex. 1 at 3.) Therefore, only actions occurring on or after June 2, 2018—300 days before the date of filing—would be considered timely. Johnson does not allege any specific acts of retaliation that occurred within this time period. However, the Court will not address this issue because UPS has failed to assert this affirmative defense. *Sua sponte* consideration of the defense of statute of limitations must only be done "sparingly," and in circumstances not applicable here. *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 654–5 (4th Cir. 2006). Therefore, despite the fact that this defense appears to preclude both causes of action for retaliation, the Court will not consider this issue in resolving this case.

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. Courts should also consider the workplace environment's "effect on the employee's psychological well-being." *Id.*

Johnson's hostile work environment claim fails for the same reason his retaliation claims fail: Johnson has failed to plead that the actions he complains of—including the longer work days and disciplinary action—occurred "because of" his religion. There are simply no facts that connect Johnson's overtime work and the discipline he received to his religion beyond his own assertions. Without additional details, the fact that one employee told Johnson once that "they" would not help Johnson because of his religious accommodation in which he did not work on some Fridays and left early on others, is not the type of severe and pervasive harassment that rises to the level of a hostile work environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

In addition, Johnson alleges for the first time in his response to UPS's motion to dismiss that witnessing his wife being physically and verbally harassed at UPS caused him to develop Post Traumatic Stress Disorder and contributed to a hostile work environment. (Opp'n Mot. Dismiss at 4.) However, Johnson's 2019 EEOC charge does not mention this harm as a basis for any of his claims. Instead, Johnson's 2019 charge focuses on the fact that he believed he was being forced to work longer hours and experiencing pretextual discipline. A party may only bring charges in a civil suit that are "reasonably related" to a party's EEOC charge. *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). The harms Mrs. Johnson experienced, and the associated impact on Mr. Johnson, is sufficiently distinct from the overwork and discipline Mr. Johnson complained he personally experienced that the Court finds it is not "reasonably related" for purposes of bringing this suit. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (holding a plaintiff fails to exhaust administrative remedies where EEOC charge "reference[s] different time

frames, actors, and discriminatory conduct than the central factual allegations in his formal suit."). Therefore, to the extent Johnson premises his claim for hostile work environment on the harm he experienced watching his wife being harassed, Johnson has not exhausted his administrative remedies and this aspect of his claim will be dismissed on those grounds.

Accordingly, the Court will dismiss Johnson's hostile work environment claim for failure to state a claim under Rule 12(b)(6).

### IV. *Motion for a More Definite Statement*

At the conclusion of its motion to dismiss, UPS requests in the alternative that Johnson submit a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). (Mot. to Dismiss at 23–25.) Because this Court will dismiss Johnson's Complaint, UPS's request for a more definite statement is moot.

### V. *Conclusion*

For the foregoing reasons, an Order shall enter granting UPS's motion to dismiss (ECF No. 23).

DATED this 15 day of January, 2020.

BY THE COURT:

_____
James K. Bredar
Chief Judge